MISSOURI, K. & T. RY. CO. OF TEXAS et al. v. DALE BROS. LAND & CAT-TLE CO. (No. 8241.)

(Court of Civil Appeals of Texas. Ft. Worth. Oct. 16, 1915.)

1. APPEAL AND ERROR ⊂⊃1050 — HARMLESS ERROR—EVIDENCE—ADMISSIBILITY.

In an action for negligence in transporting live stock, the plaintiff's witness was permitted to say that he had never heard anything about the fact that a certain train did not run on Sunday. The defendants objected on the ground that the answer was immaterial. *Held,* that admission of the testimony was not prejudicial error, even if immaterial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. ⊂⊃1050.]

2. EVIDENCE ⊂⊃366—GOVERNMENT REPORTS —LIVE STOCK—TABLE OF SHRINKAGE—AUTHENTICATION.

In an action for damages for negligent transportation of stock, it is not error to exclude tables of the Department of Agriculture and by the Texas Cattle Raisers' Association as to tests of shrinkage of stock in transportation, where there is nothing to show that they are accurate, authentic, or that the tests embraced therein were made under similar conditions.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1521–1539; Dec. Dig. ⊂⊃366.]

3. EVIDENCE ⊂⊃383 — PUBLIC DOCUMENTS — WEIGHT.

A pamphlet or other document, purporting to have been used by the government or under the authority of some department of the government, has, prima facie, no more weight as evidence, nor greater authenticity or verity, than documents issued by other authority.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1660–1677; Dec. Dig. ⊂⊃383.]

4. CARRIERS ⊂⊃228 — CARRIAGE OF LIVE STOCK—EVIDENCE—SUFFICIENCY.

Evidence, in an action for damages for negligent delay in transportation of live stock, *held* sufficient to sustain a verdict for the plaintiff.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957–960; Dec. Dig. ⊂⊃228.]

Appeal from Clay County Court; W. T. Allen, Judge.

Action by the Dale Bros. Land & Cattle Company against the Missouri, Kansas & Texas Railway Company of Texas and others. From a judgment for plaintiff, defendants appeal. Affirmed.

C. C. Allen and Arnold & Taylor, of Henrietta, for appellants. Wantland & Parrish, of Henrietta, for appellee.

BUCK, J. Appellees, Dale Bros. Land & Cattle Company, filed this suit in the county court of Clay county against the appellants, Missouri, Kansas & Texas Railway Company of Texas and the Missouri, Kansas & Texas Railway Company, alleging the shipment by the plaintiffs, over the defendant companies' lines, of 105 steers from Henrietta, Tex., to the National Stockyards, Ill., said shipment leaving its point of origin July 5, 1914, and reaching its destination on the morning of July 9th. Plaintiffs alleged injuries resulting from delay, rough handling, and failure of the cattle to reach their destination in time for the market of July 8th, alleging that the market for such character of cattle had declined on the 9th. Plaintiff further alleged that said cattle were, by reason of said alleged rough handling and delay, depreciated in marketable appearance and actually sold for 10 cents per hundredweight less than they would have sold for on said market but for such delay and rough handling, and a loss in weight of at least 40 pounds per head by reason of said alleged 24 hours delay. The total damages claimed aggregated $457.67. The cause was submitted to the court without the aid of a jury,

and judgment rendered for $265, from which judgment the defendants appealed.

Appellants' first assignment complains of the action of the court in permitting, over objection, one of the plaintiffs, J. E. Dale, to answer the following question propounded by his counsel, to wit:

"Mr. Dale, did you ever hear anything about this train, passing through Whitesboro at 12:10 a. m., not running on Sunday?"

To which the witness replied, "No, sir." Appellants urge that the answer of the witness was immaterial and irrelevant. The evidence shows that the cattle were loaded on the cars of the Southwestern Railway Company at Scotland, some 20 miles from Henrietta, at about 3 or 3:30 p. m. Sunday, July 5th, and reached Henrietta about 1½ hours later. They were there delivered to the defendant Missouri, Kansas & Texas Railway Company of Texas, about 15 or 20 minutes being required for the transfer. The train reached Whitesboro between 12:30 and 1 a. m. of the 6th. It appears there was a regular stock train from Ft. Worth through Whitesboro, with which this shipment would have made close connection had it run that night, but, as testified to by E. H. Smith, witness for the defendants:

"The regular stock train from Ft. Worth did not run that night. It is very seldom we have any stock on Sunday, and for this reason this train runs very infrequent on Sunday. There being no regular through stock train on this night, we handled this shipment of stock on a second class fast merchandise train out of Dallas at 10 p. m., due at Whitesboro at 3 a. m., and passed through on this night at 3:20 a. m. That was the only train we had passing west for the north that night, and this train picked up these cattle and carried them on to Denison."

Several witnesses for plaintiff, who had had experience in shipping cattle from Henrietta, Tex., to the National Stockyards, St. Louis, testified that, where such cattle were loaded on cars at Henrietta from 7 to 9 o'clock p. m., they would usually and customarily reach the stockyards early on the morning of the third day, and in time for the market of that day, and defendants introduced testimony as to the infrequent running of this Sunday night stock train from Ft. Worth in order to show that they were not negligent by reason of the delay at Whitesboro. In rebuttal plaintiff Dale testified in the language complained of.

[1] While in their statement under this assignment appellants have not complied strictly with the requirements of rule 31, governing Courts of Civil Appeals (142 S. W. xiii), which reads, in part, as follows:

"To each of said propositions there shall be subjoined a brief statement, in substance, of such proceedings, or part thereof, contained in the record, as will be necessary and sufficient to explain and support the proposition, with a *reference to the pages of the record*" (Emphasis ours)

—and, perhaps, we would be justified in sustaining appellees' objection to the consideration of this assignment (see Laird v. Mur-

ray, 111 S. W. 782; Scanlon v. Railway Co., 45 Tex. Civ. App. 345, 100 S. W. 983; Conn v. Rosamond, 161 S. W. 73), yet out of an abundance of liberality we have given the assignment consideration. We do not believe that there is any prejudicial error in the court's permitting the answer complained of. At most, if it was immaterial, it does not appear to be injurious.

[2] Appellants' second assignment is directed to the action of the court in refusing to—

"permit the defendants to read in evidence the report made by the Agricultural Department of the United States government, showing various tests as to shrinkage of animals shipped from various points to the different markets, also the tests made by the Texas Cattle Raisers' Association showing the same facts, the same being objected to by counsel for plaintiffs as being irrelevant and immaterial."

[3] Appellants urge that this character of testimony was admissible in rebuttal of testimony offered by defendants as to the amount of shrinkage suffered by cattle while in shipment. Nothing is shown as to the contents of the bulletins offered as to whether the tests therein described were made under similar conditions to those existing in the shipment in question, and, moreover, appellants do not show in their bill of exceptions, or their statement under this assignment, or anywhere, that such bulletins were proved up, certified to, or in any legal way were such bulletins shown to contain a true record of the tests therein purported to be set out. We do not understand that a pamphlet or other document purporting to have been used by the government, or under the authority of some department of the government, has any more weight as evidence, or carries upon its face any stamp of greater authenticity or verity, than documents issued by any other authority. The case of Railway Co. v. Graham & Price, 174 S. W. 297, cited by appellants, by the Court of Civil Appeals for the Eighth District, does not, in our opinion, support the contention made, but is in opposition thereto. Judge Harper, in the opinion, speaks as follows:

"The third [assignment] charges error in refusing to allow the defendant to introduce in evidence United States government report of tests made of the shrinkage of other cattle under similar circumstances, issued in the form of a printed bulletin. The principle, as gathered from the authorities, is that wherever documents of a public nature would themselves be evidence if produced, and which could not, without inconvenience to the public interest, be removed from their place of custody, certified copies or copies verified by some person who has seen the original are admissible, and in the absence of such proof of correct copies are not admissible."

In the case of Smithers v. Lowrance, 100 Tex. 77, 93 S. W. 1064, Chief Justice Gaines, in passing upon the admissibility of parol testimony to establish the authenticity of a purported copy of certain records in the office of the land commissioner, held that such examined copies were admissible when proved

up by a witness, but quotes from 1 Greenleaf, Evidence, § 485, as follows:

"'Where the proof is by copy, an examined copy, duly made and sworn to by any competent witness, is always admissible.' Why not admissible? The evidence is as satisfactory certainly as a certified copy. In the latter case we depend upon the honor and integrity of an official, and in the former upon the oath of a competent witness. In either case, an error or a fraud is easily detectable. Probably, the reason why such a mode of proof has not been much known, if known at all, in our practice, is that it is cheaper and handier to produce copies, and if a witness comes instead, it is more satisfactory to have the officer who controls the records bring them into court."

But no such proof is shown to have been made in this case and, therefore, and further because the conditions were not shown to have been similar, the assignment is overruled.

[4] The third assignment alleges error in the judgment of the court as being contrary to the law and evidence. While it is true that defendants' witnesses testified to facts tending to show prompt delivery of the shipment in question, yet there were a number of cattle shippers, the plaintiff and others, who testified that, with an ordinary run and without unusual delays, the shipment in question should have reached its destination 24 hours earlier than it did, and such testimony is sufficient, in our opinion, to sustain the judgment. According to the testimony of the plaintiffs' witness Keechleer, who was the salesman who sold the cattle, they weighed at St. Louis 120,670 pounds. He testified that by reason of the 24 hours' delay in shipment the cattle would have lost at least 30 pounds per head, or 3,150 pounds, and if they had reached the market 24 hours earlier they would have sold for at least 10 cents per hundredweight more. This would make the loss sustained $375.82. The judgment is for $265, and we are unable to say that it is not sustained by the evidence.

The judgment is affirmed.