STATE v. ELMORE.

1. EVIDENCE—PAROL.—After account has been offered in evidence, parol evidence is admissible to show that another than he to whom goods are charged was looked to as the principal debtor.

2. CONSTITUTION—LANDLORD AND TENANT—RENTS—AGRICULTURAL LIENS.—Code 1902, sec. 3057, giving landlords liens for rents and advances made to tenants, is constitutional.

3. AGRICULTURAL LIEN—ADVANCES.—Where a landlord takes a written contract, giving him a lien on his tenant's crops for rent and advances made by him, and assigns such contract to a third person, the latter has no lien on crops for advances made by assignee to tenant.

Before BUCHANAN, J., Spartanburg, 1903. Reversed.

Indictment against Alfred Elmore. From sentence, defendant appeals. The contract on which the indictment was based is as follows:

"State of South Carolina, county of Spartanburg. This indenture, made this 7th day of October, A. D. 1901, between L. L. McLemore and Alfred Elmore; witnesseth that Alfred Elmore is to labor on the land of L. L. McLemore for the year 1901, and to cultivate all of the land on the John Johnson plantation from the new fence to the line except three acres on the northwest of plantation above the road. Said land situate in said county and State and bounded by lands of L. P. Walker, Jos. Walker and others and John N. Cudd, containing about ninety acres.

"And it is distinctly agreed that, the entire crop belongs to L. L. McLemore, that they are to have possession and control of the same and that for the labor to be done by Alfred Elmore he is to pay said Alfred Elmore all the crops grown on said plantation after paying themselves from said laborer's aforesaid wages, all advancements made or debts due to the said L. L. McLemore, and four bales of the first lint cotton, weighing five hundred pounds each, and the seed out of the same, and the said Alfred Elmore further agrees that he will take good care of the premises; will keep all persons from trespassing thereon, and the houses occupied by him in good repair; and said Alfred Elmore agrees to keep all ditches, terraces, branches or creeks, surrounded by or bordering on land worked by him open and in good clean condition, and that no animal shall be pastured on said land, except at such times as L. L. McLemore, except four head of cattle and two mules, shall give written consent thereto. Only timber is to be used for firewood, except by express permission of L. L. McLemore. If the crop is not cultivated and gathered promptly, L. L. McLemore can hire help to cultivate and gather the same at the expense of Alfred Elmore. L. L. McLemore is to be at no other expense

except expressly stipulated herein, and the said Alfred Elmore is to have charge of the shop and tools that are on said place to use as he sees fit and all plows and tools on said place.

"The covenants herein shall be binding on the heirs, executors or administrators of the parties herein.

"Witness the hands and seals of the parties aforesaid the day and year above written.

his

"Alfred x Elmore.  (1. s.)

mark

"In presence of C. P. Sims.

his

"L. L. x McLemore.  (1. s.)

mark

"For value received I hereby assign the within contract to J. F. Johnson.  L. L. McLemore.

"Witness P. S. Corn, H. V. Johnson."

*Messrs. Ralph K. Carson* and *John S. Reynolds,* for appellant, cite: *No lien for advances unless in writing:* Code, 1902, secs. 3057-3061. *Sec. 3057 is unconstitutional:* 101 U. S., 22; 152 U. S., 367; 43 Am. St. R., 670; 31 Am. St. R., 533; 37 Am. St. R., 206; 46 Am. St. R., 315; 50 Am. St. R., 443. *Landlord cannot pass right to lien to assignee:* 99 Ga., 139; 98 Ga., 567.

*Solicitor T. S. Sease,* contra, cites: *Landlord has lien for advances without writing:* 21 S. C., 51; Code, 1902, 3057. *Sec. 3057 is not violative of Constitution:* 63 S. C., 169, 425.

March 4, 1904.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.    The defendant was tried before the Court of General Sessions for Spartanburg County, in this State.    The jury found him guilty and he was duly sentenced.    Thereafter he appealed from such judgment.

The following statement embodies the pertinent facts under-
lying the contention: On the 7th day of October, 1901, the
defendant leased from one L. L. McLemore ninety acres of
land, in the county of Spartanburg, in this State, for the year
1902, as farming lands. The agreement was under seal and
signed by both parties. The rent was fixed at four bales of
cotton, each bale weighing 500 pounds, and the seed from
said 2,000 pounds of cotton, with a lien upon the entire
crop to secure payment of rent and any advances made by
said landlord. After said lease had been made, the land-
lord, L. L. McLemore, assigned said contract to one J. F.
Johnson. On the 27th March, 1902, the said defendant,
wishing guano and some supplies, executed a note and mort-
gage of one horse and top buggy to the firm of Johnson
Brothers, as merchants, of which firm J. F. Johnson was
one of the partners, for the sum of $110. The defendant's
account with said firm was allowed to reach the sum of
$175.15-100. On August 2d, 1902, this account was trans-
ferred on the books of Johnson Brothers to J. F. Johnson.
Some time in the month of October, 1902, the defendant
paid to J. F. Johnson the entire rent. During the same
month, October of 1902, the defendant paid off his note and
mortgage to the firm of Johnson Brothers, and received
from said firm said note and mortgage fully satisfied by said
firm of *Johnson Brothers.* But there remained unpaid the
sum of $65.15-100, which the defendant promised to pay as
soon as he picked out the balance of his cotton crop. Three
days after such promise, J. F. Johnson went upon the leased
premises and found that the defendant had removed all of
his cotton from said premises. The defendant was indicted
for a violation of section 3057, relating to landlords and
tenants, whereby rent is secured by a lien on all crops grown
upon the rented lands and supplies furnished by landlord to
tenant. While his trial was in progress, and after it had
been proved by the books themselves, of the firm of Johnson
Brothers, that the defendant's account for supplies and
guano had been entered as with *Johnson Brothers,* as well

as the note and mortgage, the prosecution sought to estab-
lish, by asking one of the State's witnesses, if the firm did
not look to J. F. Johnson as the person really liable to them
for payment of such advances.    The defendant objected to
such testimony on the ground that it was at variance with
the rule of law declaring that parol testimony which tended
to vary a written contract was not admissible.    The Judge
allowed the testimony to be given.    This is one of the
grounds of appeal.    When the testimony offered by the
State was announced as closed, the defendant asked the Cir-
cuit Judge to instruct the jury to acquit the defendant: 1st.
Because there was a failure of proof to establish a lien in
favor of the landlord, or that the defendant was indebted to
him for the supplies.    2d. Because contracts for advance-
ments must be in writing.    3d. Because section 3057 of
Code of Laws of this State, giving a landlord a lien for sup-
plies advanced, whether the contract for advancements be in
writing or verbal, was unconstitutional, in that it violated
sec. 5, of art. I., of the Constitution of South Carolina.

The Circuit Judge refused the motion.    This is a ground
of appeal.    No testimony was offered by the defendant.
The Court then charged the jury, and to certain parts of this
charge the defendant has accepted.    The defendant was
found guilty by the jury.    A motion was made for a new
trial, which was refused.    It should have been stated just
before the last sentence, that at the close of the Judge's
charge the defendant requested the Court to charge the jury,
"That if Alfred Elmore believed that he was purchasing
goods from Johnson Brothers, that he was dealing with
Johnson Brothers, then it cannot be taken in the matter of
J. F. Johnson without the knowledge or consent of Alfred
Elmore; that is, if he understood that he was trading with
Johnson Brothers, then they could not transfer that debt
to J. F. Johnson."    This the Court declined to charge in
these words: "The view I take of it is, it is immaterial as to
who he got the goods from, just so they were coming from

the man that furnished him; that is sufficient. It is enough for him that he received the goods."

The defendant has preferred in his appeal several grounds of exception to the judgment against him as follows:

"1st. In overruling the defendant's objection to the solicitor's question, 'Mr. Johnson, who furnished Alfred Elmore goods this year?' upon the ground that he was attempting to contradict a written contract by parol evidence.

"2d. In ruling and holding that a landlord had a lien under the statute for supplies advanced to his tenant without a written contract.

"3d. In holding that sec. 3057, Code of Laws, was not in violation of sec. 5, art. I., of the Constitution of South Carolina.

"4th. In refusing to instruct the jury to acquit the defendant upon the ground that there was no proof of lien upon his crop, or of any contract, written or verbal, for the advancement of supplies by the landlord, J. F. Johnson, to the defendant.

"5th. In refusing to charge the jury, that if Alfred Elmore believed that he was purchasing the goods from Johnson Brothers, that he could not be made the debtor of J. F. Johnson without the knowledge or consent of Elmore; that if he understood that he was trading with Johnson Brothers, then they could not transfer the account to J. F. Johnson, so as to make Alfred Elmore indebted to him for supplies furnished.

"6th. In refusing to instruct the jury, that in order for the landlord to have a lien for supplies furnished, they must have been furnished by him to the defendant under an agreement to that effect; and instructing the jury, "that it was immaterial as to who he got the goods from, just so they were coming through the man that furnished him, that is sufficient. It is enough for him that he received the goods."

"7th. In charging, 'It makes no difference how many hands the goods come through, if the person alleged to be

10—68

the owner of the crop did advance the goods alleged to have been advanced here. It makes no difference whether the guano was bought from partnership or not; if he got the advance, it makes no difference who sold him the goods; if it was done by agreement of Mr. Johnson.' "

Let us see what virtue there is in these exceptions.

1. The real object of the appellant in this exception was to establish the proposition of law that it was not proper to allow J. F. Johnson, through his own testimony, or that of any other witness, to state that the contracts of the defendant with *Johnson Brothers* were really the contracts of the defendant with *J. F. Johnson.* The appellant was correct; the testimony is inadmissible.

2. The misfortune of the appellant, so far as the second exception is concerned, was that he agreed in writing to give a lien to *his landlord,* L. L. McLemore, for any supplies he furnished him. We are not sure but that if this landlord, L. L. McLemore, had made any advances to the defendant as his tenant, said landlord could have recovered for the same under the machinery of the law. In other words, we think the lien is given by this language of section 3057 of Code of Laws of this State: "* * * and subject to the laws hereinafter provided for and enforceable in the same, the landlord shall have a lien on all the crops raised by a tenant for all advances made by the landlord to such tenant during the year."

3. We do not see why section 3057 of the Code of Laws in this State is not constitutional. It deals with all landlords as a class. See *Porter* v. *Railway,* 63 S. C., 169, 41 S. E., 108; *Simmons* v. *Telegraph Co.,* 63 S. C., 425, 41 S. E., 521.

4. It seems to us that this exception is fatal to the judgment against the defendant. Section 3057 of the Code of Laws of this State is direct and specific in its reference to landlords. It provides a lien in favor of landlords. It is true, it is the power of a landlord as such to assign his rent to some other person, but that does

not make such assignee of a landlord a landlord.    A man
to be a landlord must sustain some relation to the land; he
must be owner or *quasi* owner.    The said J. F. Johnson was
neither owner nor *quasi* owner of this land leased to the de-
fendant.    All he could do under his assignment was to col-
lect the rent and probably any advances L. L. McLemore had
made the defendant before he assigned the lease to J. F.
Johnson. . *Anderson's Dictionary Law,* at page 597: "A
landlord is described as one who owns lands or tenements
which he has rented to another or others."    By *Rapalgie &
Laurence's Law Dictionary,* "Landlord" is defined: "He of
whom lands or tenements are holden, who has a right to dis-
train for rent in arrears."    *Co. Litt.,* 57.    We have just
remarked that all the rights of McLemore, the assignee, as
against the defendant was to collect the rent, to wit: four
bales of cotton and the seed for said four bales, except the
covenants as to the use of the lands.    This the defendant has
paid.    The covenants in the lease were that Alfred Elmore
bound himself therefor, so far as "the heirs, executors or
adminstrators" of McLemore were concerned.    We hold,
however, that as to the rent due, the assignment was good.
It follows, as no lien was given by Alfred Elmore to J. F.
Johnson to secure the $65.15 still due on the account of
Johnson Brothers, the prosecution failed, because J. F.
Johnson, as assignee of Johnson Brothers, had no lien
subsisting on the crops of Alfred Elmore to secure said
advances.

5, 6 and 7.    These exceptions become immaterial after our
holding that J. F. Johnson had no enforcible lien on the
crops of Alfred Elmore during the year 1902.

It is the judgment of this Court, that the judgment of the
Circuit Court be reversed.

MR. JUSTICE JONES.    I concur in the result.    I do
not think the first exception should be sustained, as
I cannot see how the testimony admitted tended to
contradict any written instrument.    But I concur in revers-

ing the judgment upon the ground that there was no proof that defendant had disposed of any crop upon which there was any existing lien.

MR. JUSTICE WOODS. I concur in the result. The written contract, which will be printed in the report of the case, did not create the relation of landlord and tenant. *McCutchen* v. *Crenshaw,* 40 S. C., 511, 19 S. E., 140; McLemore, therefore, had no statutory lien to assign, and the defendant could not be convicted of disposing of crops under a lien which did not exist. I think the fourth, fifth, sixth and seventh exceptions should be sustained, on this ground as well as on the reasoning of the Chief Justice.