JAMES v. BLAKE. (No. 1405.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 13, 1918.)

1. LANDLORD AND TENANT &#9099;331(8)—CROP-SHARING CONTRACT—ACTION—ISSUES.

In landlord's action to restrain tenant from cutting maize stalks after heading of feed, submission of issue as to whether landlord was to have stalks in consideration of furnishing tenant with tools and pasturage *held* unauthorized under the evidence.

2. LANDLORD AND TENANT &#9099;321 — CROP-SHARING CONTRACT—VALIDITY.

Rental contract, whereby landlord was to furnish land and pasturage in return for one-third of all feed and one-fourth of all cotton grown on land, and in addition the maize stalks, after heading of feed, was not illegal, or in violation of statute.

Appeal from Motley County Court; A. B. Crane, Judge.

Action by Jack James against J. S. Blake. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

G. E. Hamilton and C. B. Whitten, both of Matador, for appellant.

Bouldin & Surles, of Matador, for appellee.

HUFF, C. J. The appellant, James, instituted this action against Blake in the court below, alleging: That he, as owner of certain land, rented 65 acres thereof to the appellee, Blake, for the season of 1917. Fifty acres was to be planted in feed and 15 acres in cotton. "That for the use of the land the plaintiff was to receive one-third of all the feed and one-fourth of all the cotton, and that as soon as the feed was headed the defendant was to return to plaintiff the stalks and the feed, to be used by plaintiff for pasture for his cattle. That all the feed had been gathered, but that defendant disregarded his contract relative to the stalks and was cutting them." He prayed for an injunction, which was granted, and the writ issued upon filing the required bond. The defendant answered, among other things, that he was to pay a third and fourth, as set out by plaintiff, for the use of the land, and that in the rental contract "defendant agreed to furnish all tools, work stock, and everything

else necessary for the proper cultivation of said 65 acres, and also to work and cultivate all of said crops," and specially denied "that he agreed for plaintiff to have the stalks of said grain after the same was headed, but, even though he did so agree, such agreement would be void and unenforceable." He then set up the writ of injunction, restraining him, and alleged plaintiff appropriated the stalks, which were of the value of $200, by reason of which he was entitled to recover double the value thereof, and prayed for judgment for that amount.

By a supplemental petition the plaintiff denied the answer, and specially answered the cross-action; denied defendant's allegation that he was to furnish all tools and work stock, but alleged, on the other hand, in addition to furnishing the land, plaintiff "also agreed to and did furnish defendant with all tools and farming implements with which to work and cultivate said 65 acres of land, except one cultivator, and that plaintiff also furnished to defendant pasturage for six head of stock during the entire time defendant was cultivating the premises of plaintiff, including work stock and milk cows, all of which was part of the rental contract between plaintiff and defendant, and the furnishing of the land and tools and pasturage by plaintiff to defendant was the consideration received by defendant from plaintiff for the rents he was to pay plaintiff, and all of said conditions and agreements went into and formed part of the rental contract made between plaintiff and defendant; that in consideration of the furnishing of said tools and grazing his said cattle and work stock by plaintiff the defendant entered into the contract of rental as alleged in plaintiff's original petition, and that the only rent charged by plaintiff or collected by him of defendant for the use of said 65 acres of land was one-third of the grain and one-fourth of the cotton; that for the use of said tools and the grazing of the stock as aforesaid defendant readily agreed with plaintiff that the stalks in the field, after heading the grain by defendant, would be the property of the plaintiff.

The appellant testified that, when he made the rental contract with appellee, it was agreed between them that appellant would furnish the land, a house in which the defendant should live, a riding turning plow, a planter, a harrow, and a go-devil, they being tools and implements with which the crop was to be cultivated, and also was to furnish pasturage for defendant's work stock, his milk cows, and filly, which defendant did not work at all; that he did furnish the above tools and pasturage, and also furnish defendant a cow to milk a part of the time; that by the terms of the agreement plaintiff was to receive the usual rents of one-third of all grain and feed and one-fourth of the cotton and seed raised by de-

fendant; and that it was specially agreed at the time that plaintiff was to have the stalks left in the field after the maize heads were gathered from them. Appellee, on the above point, testified that the contract simply provided that plaintiff was to receive as rents one-third of the grain and feed and one-fourth of the cotton raised, and no reservation was made with reference to the maize stalks in controversy. He also testified that at the time the contract was made nothing was said about plaintiff furnishing him tools with which to work the crop, but admitted that he did use the tools of plaintiff enumerated above in preparing his land, planting and cultivating his crop, but claimed this accommodation was the result of an after agreement. Defendant testified, also, that it was a part of his rental contract that he was to get pasturage for his work horses, his filly, and his milk cow, and that he kept them in the plaintiff's pasture during the year, and that plaintiff did furnish him a milk cow part of the time to milk, and that he also kept her in plaintiff's pasture.

The jury found the value of the stalks to be $150, and the court, on the verdict, rendered judgment for $300. The court submitted the following issues:

"When the rental contract was made between plaintiff and defendant, was there an agreement between them that plaintiff was to furnish a part of the farming tools and pasture for defendant's stock, and in consideration of furnishing the same was plaintiff to have the maize stalks in question in the suit after the heads were cut off?"

The jury answered this issue "No." The appellant asked the following issues to be presented:

First: "When plaintiff and defendant made their rental contract, did plaintiff reserve the maize stalks in controversy to his own use, by the terms of the agreement?"

Second: "Did plaintiff, as landlord, furnish anything to the defendant under their rental contract, more than the land?"

[1, 2] The court refused to submit the two issues requested, to which action of the court the plaintiff excepted, and also filed objections to the issues submitted by the court. The facts in this case did not authorize a submission on the above issue by the court; that is, in consideration of the tools and pasturage, was appellant to have the maize stalks? By the testimony of appellant, the rental contract was that he was to have the third and fourth and the stalks after they were headed. He was to furnish the land and tools and pasturage for the work stock and milk cow of appellee. There is no testimony that the tools and pasturage were furnished as a consideration for the stalks. It was all one contract; the mutual covenants being the consideration thereof. From the manner in which the question was framed, under the evidence the jury could have returned no answer other than the one they did. The appellee admitted the rental contract required the furnishing of the pasturage for

his stock which was done, and testified that there was no agreement as to the tools, but that in fact appellant did furnish the tools with which appellee made his crop. If the court had submitted the second issue requested, the jury, under the undisputed evidence, could have returned no other answer than in the affirmative. The evidence raised the issue whether appellant was to have the stalks after they were headed. Under the uncontradicted facts in this case (that is, appellant was to furnish the pasture and the land), a contract for the stalks, after being headed, and in addition to the third and fourth, was not illegal or in violation of the statute. Doby v. Sanders, 198 S. W. 806; Green v. Prince, 201 S. W. 200. The court was in error in rendering judgment for double the value of the stalks as found by the jury, for the reason that the uncontroverted testimony shows that appellant did furnish the pasturage for the work stock and milk cows, in addition to the land to the tenant.

Appellant also calls upon this court to pass upon the constitutionality of the statute. In this case it is unnecessary to do so, and the question will be pretermitted.

Reversed and remanded.