### KOONTZ et al. v. SAVELY et al.
### (No. 6593.)

(Court of Civil Appeals of Texas. San Antonio. June 15, 1921. Rehearing Denied June 29, 1921.)

1. Chattel mortgages ⬤➝138(3)—Landlord and tenant ⬤➝245—Landlord's statutory lien applies to land rented part for a dairy and part for farming.

Where the rental of a farm, to be used partly for dairy but mostly for agricultural purposes, was a gross sum, and the contract was entire and indivisible, the lien of the landlord on the crops for rent and for advances to help in making the crop under Vernon's Sayles' Ann. Civ. St. 1914, art. 5475, will attach for the whole rental, and is superior to a chattel mortgage given by the tenant on the crop, and is good against all who purchase any of the crop grown within the period stated in the statute.

2. Courts ⬤➝121(3)—District court held to have jurisdiction in suit to foreclose chattel mortgage.

In a suit to foreclose a chattel mortgage on cotton securing a note for $362.25, brought against a landlord and others claiming an interest in, or lien on, the property, in which the landlord asked judgment for about $1,400, the value involved was within the jurisdiction of the district court.

Appeal from District Court, Victoria County; John M. Green, Judge.

Action by M. A. Koontz against J. R. Savely and others. From a judgment in favor of defendant Crutsinger, sustaining his landlord's lien giving it priority over certain liens and mortgages, plaintiff and certain defendants appeal. Affirmed.

Fly & Ragsdale, of Victoria, for appellants.

R. L. Daniel, J. T. Linebaugh, J. P. Pool, and Proctor, Vandenberge, Crain & Mitchell, all of Victoria, for appellees.

COBBS, J. This suit was brought by appellant Koontz against J. R. Savely, V. M. Crutsinger, the People's National Bank, Victoria National Bank, Victoria Manufacturing Company, Planters' Gin & Mill Company, and Ed. Jones.

It was alleged that J. R. Savely was indebted to appellant, evidenced by a promissory note, dated January 1, 1920, for the sum of $362.25, due September 1, 1920, secured by a certain chattel mortgage of even date therewith on 60 acres of cotton and 25 acres of feedstuff to be grown during the current year on the farm of appellee Crutsinger, which chattel mortgage was duly filed for record.

It was alleged that the crop was grown thereupon and duly harvested; that appellee Planters' Gin & Mill Company took possession of six bales of the cotton between August 24, and September 17, 1920, and converted the same to, their use, of the value $600; that appellee Savely stored four more bales of cotton, raised by him, in the warehouse of appellee Victoria Manufacturing Company; that appellee delivered warehouse receipts for three more bales of the cotton to People's National Bank and a receipt for one bale of said cotton to appellee Victoria National Bank, and that said banks were asserting some kind of title, interest, or claim thereto; that the value of the four bales of cotton stored in the warehouse of Victoria Manufacturing Company were of the value of $600; that appellee Crutsinger took into his possession and converted to his own use certain sorghum, cotton, cotton seed, and grain, being a portion of the crop raised by appellee Savely, of the value of $318; that Ed. Jones was asserting some kind of claim or lien against all or a portion of the crop; that all the above-described property came under and was subject to appellant's said prior chattel mortgage lien.

The prayer of the petition was for a judgment for the appellant's debt against appellee Savely and for the foreclosure of the lien; judgment against appellee Planters' Gin & Mill Company, and against appellee Crutsinger for the value of the mortgaged property converted by them, and for judgment against appellee Victoria Manufacturing Company for the four bales of cotton stored with it and held adversely to appellant, or for its value in the sum of $600.

Appellee Crutsinger answered and filed exceptions, general denial, and cross-action, asserting a prior landlord's lien for rent and advances made to the tenant, Savely, appellee, the purchase price of certain chattels

and advances made to him as his landlord, aggregating $2,509.70, less a credit of $1,867.50, representing the resale to him by appellee Savely of the major part of chattels by him purchased from Savely, appellee, of sorghum, cotton, and cotton seed, constituting a part of the crop in controversy, of the value of $288, and for rents for the use of the farm in the sum of $650.

Appellee Crutsinger also set up a written contract between him as landlord and Savely, his tenant, for the rent of the premises and dairy farm business, for which he was to receive as a rental the sum of $650 to cover the rent for the entire rental period from the 16th day of September, 1919, to January 1, 1921. Appellee Crutsinger pleaded that the crop raised was four bales, stored with Victoria Manufacturing Company (no value given); five bales converted by Planters' Gin & Mill Company, of the value of $700, two bales of cotton sold to Planters' Gin & Mill Company with Crutsinger's consent (no value given); sorghum, cotton, and corn and cotton seed purchased by Crutsinger from Savely, $288; and fixed the debt due by Savely to him at $930, representing the difference between the sale price of the chattels and the repurchase price of the same, $30.75 cash advances and $650 as rental of the entire premises under the contract, a total of $1,322.95 for which judgment was asked against Savely for foreclosure of the landlord's lien as superior to the lien of plaintiff and all other defendants. The two banks answering in reference to the warehouse certificates representing three bales of cotton stored with Victoria Manufacturing Company, asserted liens inuring to their benefit against the bales of cotton by virtue of the furnishing by them of certain funds to Savely to defray the expenses of cotton picking, and asked that their liens be given preference.

The Victoria Manufacturing Company answered that it had ginned four bales of cotton stored in its warehouse, and that the ginning charges were paid in a sale to it by Savely of the cotton seed, and that after the charges were paid there remained an overplus of $9.86, which it paid to Savely. It offered to surrender the four bales of cotton upon payment of warehouse charges and the surrender of the receipts for cancellation.

Defendants Savely and Jones did not answer.

Appellant pleaded in abatement to the answer of appellee Crutsinger in attempting to assert a landlord's lien under the Landlord and Tenant's Act (Laws 1915, c. 38 [Vernon's Ann. Civ. St. Supp. 1918, art. 5475]), which creates a lien in favor of landlord for rents and advances in excess of the value of one-fourth of the cotton and one-third of the grain raised on the farm; that the contract contemplated a twofold purpose, the raising of a crop and the operation of a dairy farm,

all covered by a gross rental amount, which created no express lien itself, and not such an undertaking as to permit the landlord to invoke the statutory lien.

Crutsinger amended his answer and brought cross-action substantially the same, and divided the $650 annual rental into two sums, one for $410, as reasonable rental for the premises for farming purposes, and the other, $240, the reasonable rental value of the premises for dairy purposes, prayed for a foreclosure only for $410 for farm rental and balance due on sale and repurchase of chattels, together with $30.75 cash advances, and waived any landlord's lien on the $240, the alleged reasonable rental value for dairy purposes.

The case was tried by the court without a jury, and judgment was rendered in favor of appellee Crutsinger against Savely for the amount due and sustaining appellee Crutsinger's landlord lien, giving it priority over appellant's mortgage.

The testimony developed that Roos Mercantile Company held a prior mortgage to plaintiff's on the first bale of cotton marketed and one bale only, and Planters' Gin & Mill Company who had purchased said bale, together with other bales, had satisfied Roos Mercantile Company, and the latter had released its mortgage. The court refused to give judgment to appellant against appellee Victoria Manufacturing Company for said $9.86.

It will be impossible to separately discuss the 65 assignments of error presented by appellants, as well as those presented by the other parties. In fact they all together present but few material questions for us to decide. The findings of fact and conclusions of law of the trial court are too lengthy to copy. The rental contract between the landlord and tenant being in writing, we here set it out:

"Victoria, Texas, Sept. 16, 1919.

"This memorandum of agreement entered into this 16th day of September, 1919, between V. M. Crutsinger, party of the first part, and J. R. Savely party of the second part witnesseth:

"That the said party of the first part agrees to sell to the party of the second part all live stock and implements, and feed, etc., as shown by invoice list of this date, which are located on the farm of said party of the first part about 3 miles from Victoria, at a price of $2,509.70, and that the party of the first part agrees to lease said farm to the party of the second part until January 1, 1921, with an option of renewal.

"That the party of the second part agrees to pay the above-named price for stock and implements, etc., as follows: $500 on or before October 1, 1919, in cash; and $500 on or before January 1, 1920, in cash; and any balance left unpaid of the total price of $2,509.70 to be covered by bankable notes on January 1, 1920. The party of the second part further agrees to pay an annual rent of $650 for the lease on

the entire farm aforesaid—the rent to be paid monthly as follows:: $30 or more beginning March 1, 1920, each month; and any unpaid balance of the total rent of $650 to be paid in the fall when the first cotton is sold from said farm."

[1] Appellant's first assignment complains that the court erred in not sustaining the plea in abatement to appellee Crutsinger's answer seeking to assert a landlord's lien on the crop of 1920 because it showed a rental contract in contravention of the laws of the state, in that it required said appellee to pay the landlord $650, which showed on its face to be in excess of the value of one-third of the grain and one-fourth of the cotton raised on the leased premises, and, second, it is an attempt to secure rental for the use of a dairy farm for which the statute provided no lien.

The important question raised in this case is as to the alleged priority of appellant's chattel mortgage over the excess of property or money claimed to have been produced by the tenant on the 60 acres of cotton and 25 acres of feed stuff to be grown during that current year by Savely, the tenant, on the rented premises of appellee Crutsinger. This chattel mortgage was duly and promptly registered according to law.

There is no question, under the law, in respect to the value of the use of said land and for supplies, etc., furnished and to be furnished by the landlord necessary for tenant to make a crop for the current year, he has a superior valid lien, for a certain period of time prior to the claim of any third person whosoever upon the crops grown upon the rented premises.

Does such a relation of landlord and tenant exist in this case as subordinates the appellant's chattel mortgage lien to the alleged Crutsinger's lien as landlord for both claims; that is: First, for the use of any part of the premises for the so-called dairy purposes; and, second, for agricultural purposes?

We find no difficulty in holding, as to the sums of money due for farming the land and growing a crop thereupon and for the proper advances for that purpose, that the landlord, Crutsinger, is entitled to his superior lien for the rental value for the use of the land for cropping, and the necessary advances for growing, making and harvesting the same. By reference to the testimony and the rental contract, it will be observed that the contract was made for the entire use of the rented premises, and the recited consideration thereof, for the entire rental period, was for the total sum of $650, as was expressed in the rental contract.

The contract itself, introduced in this case as the basis of Crutsinger's rights, shows the relation of landlord and tenant existing between them. Appellee Crutsinger pleaded that he also advanced $20.50 to buy feed and provisions to enable the tenant to prosecute his farming operations.

When the contract was entered into, it was in the contemplation of the minds of the parties that the place could be and might be used as a dairy in a small way and as a farm, too, the latter purpose is further illustrated by the fact that the chattel mortgage was given on the crop to appellant. Savely, the tenant, testified that the landlord stated to him at the time that the rent for dairy purposes would be worth $20 or $30 a month, with a small number of cows. He said he (Savely) did not agree to pay anything separate from the balance of the property for the grass, but "was to pay $650 for the rent of the entire place, including everything; * * * would not have taken the farm with the cultivated land without the house and barn and other improvements there as a farming property." The testimony shows: That the stock was used in the necessary conduct of the farm and the benefits secured thereby for that purpose. The milk was used by the family. No dairy was operated. That any small excess of milk or butter, if any above use for the family, was sold, but the operation of the farm for dairy purposes was not done at all, all being used for agricultural purposes and as a necessary aid thereto. All the property was used by him, improvements, stock and pasture—a mere necessary adjunct to his farming purposes, home, etc.

As said in Thomas v. Tucker, Zeve & Co., 40 Tex. Civ. App. 338, 89 S. W. 802:

"The item of $18 for pasturage was shown to have been for the pasturage of the work stock owned and used by Nations in cultivating the farm, and for his cows, from which he obtained milk for his family during the time he was cultivating said farm. The contract for this pasturage was included in the rent contract, and we think it clear, under these facts, that pasturage so furnished comes under the head of supplies, for which the statute gives a landlord's lien."

We would hesitate very much to support a contention that no lien was created in supplying a farmer, struggling to make a crop, with the benefit of cows to give milk and butter necessary to the family use, and lands with which to pasture them. The consideration in this contract was in gross, and no lien was created in the same by any express agreement, neither was the landlord's lien, so created by operation of law, in any manner waived. This contract and the testimony both show that, at the time the contract was made, it was to be entire and indivisible as to the amount to be paid for the whole property as rental. It is entire, because it shows by its nature or purpose and express terms that there was to be paid but one rental. Del Curto v. Billingsley, 169 S. W. 393; Jones v. Gammel, 94 S. W. 191; Jones v. Eastham, 224 S. W. 223; 6 Ruling Case Law, § 246, p. 858.

For the consideration of this case we do not think it necessary to discuss the so-called

Ferguson Act (Laws 1915, c. 38 [Vernon's Ann. Civ. St. Supp. 1918, art. 5475]). That has been sufficiently considered by the Court of Civil Appeals in Rumbo v. Winterrowd, 228 S. W. 261, and it may lie in the "bosom of the deep" until called forth by further treating by our Supreme Court.

The landlord, by virtue of the rental contract, had a superior lien. Article 5475, Vernon's Sayles' Civil Statutes; Hawthorn v. Coates Bros. et al., 202 S. W. 804; Green v. Prince, 201 S. W. 200; Rutledge v. Murphy, 230 S. W. 1034 (opinion of this court, delivered April 20, 1921, not yet [officially] published).

This lien in favor of the landlord is superior to and enforceable against all persons who purchase or buy any of the crop grown on the rented premises, within the stated period of time within which the lien is operative. Templeman v. Gresham, 61 Tex. 51; Thomas v. Tucker, Zeve & Co., 40 Tex. Civ. App. 337, 89 S. W. 802.

The appellee Crutsinger pleaded that at the time he rented the premises to his tenant, Savely, he was conducting a small dairy business in connection with his farming, and the premises were equipped for conducting a dairy business in a very small way, and he had a large amount of pasturage, etc., which was taken in consideration in fixing the rental value of the premises, which was reasonably worth the sum of $20 per month. That the parties intended that the premises were rented for the purpose of farming, and the fact that a small dairy could be used in connection therewith, did not destroy the landlord's lien to secure the entire rental.

It is the intention of this opinion to consider and dispose of all the errors assigned by appellants, as well as all those presented and urged by all the other parties who have answered and all those who have filed briefs, cross-assignments, and counter propositions.

[2] The amount or value of the property involved in this case, as shown by the pleadings of all parties, and the facts, show the same within the jurisdiction of the district court. Appellee Crutsinger himself appeared, answered, and pleaded affirmatively for judgment for something like $1,400.

The question of the jurisdiction was not raised by plea or exception that the amount or value in controversy brought it below the jurisdiction of the court. If it had been, the proof showed the value of the security given, and the value or amount in controversy brought it within the jurisdiction of the court. Tarbox et al. v. Kennon, 3 Tex. 7; Marshall v. Taylor, 7 Tex. 235; Bohl v. Brown, 2 Willson, Civ. Cas. Ct. App. § 542; Poulter v. Southwestern National Bank, 146 S. W. 561; Walker Mercantile Co. v. Raney, 154 S. W. 317; Hall v. Johnson, 225 S. W. 1110.

And this rule applies to those purchasing any part of the incumbered property. Templeman v. Gresham, 61 Tex. 50; Small v. Rush, 63 Tex. Civ. App. 126, 132 S. W. 874.

We think the district court had complete jurisdiction of the parties and the res. As said in Templeman v. Gresham, 61 Tex. 53, supra:

"The general rule is that all persons who claim an interest in property on which a lien is sought to be foreclosed should be made parties. Hall v. Hall, 11 Tex. 547; 2 Story's Equity, 1526; Trittipo v. Edwards, 35 Ind. 467; Jones on Chattel Mortgages, 783."

We think the trial court has made the correct disposition of the case, and we overrule all assignments of all the parties, because we find no reversible error assigned, and affirm the judgment of the court.